UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04 CR 10025-NG |
| | ) | |
| ANTHONY LAVELY | ) | |
| | ) | |

## SENTENCING MEMORANDUM OF THE DEFENDANT, ANTHONY LAVELY

This Sentencing Memorandum sets forth the Defendant, Anthony Lavely's ("Mr. Lavely") calculation of the advisory Guideline sentencing range and why it is inappropriate in this case; Mr. Lavely's presentation of grounds for downward departure from the advisory Guideline sentencing range, as well as post Booker/Fanfan factors pursuant to 18 U.S.C. §3553(a) in support of a sentence of probation and continued psychological treatment.

I.    Sentencing Guideline Analysis

a.    Calculation of Advisory Guideline Sentencing Range in Mr. Lavely's Case

On September 27, 2004, Mr. Lavely pleaded guilty to one count of receipt of child pornography in violation of 18 U.S.C. §2252(a)(2). As contemplated in the plea agreement and set forth in the Presentence Report, the applicable advisory Guideline is U.S.S.G. §2G2.2, which provides for a Total Offense Level of 16. Mr. Lavely has no prior convictions and he has no criminal history points. Based on Mr. Lavely's Criminal History Category of I and his Total Offense Level of 16, the advisory Guideline imprisonment range is 21 to 27 months. The plea agreement does not prohibit Mr. Lavely from seeking a downward departure from the advisory Guideline sentencing range.

    b.      Inadequacy of the Advisory Guideline Sentencing Range in Relation to
             Mr. Lavely's Offense Conduct

       Mr. Lavely submits that the advisory Guidelines are entirely inadequate in reflecting an appropriate sentence in this case. The Sentencing Commission addressed distinctions between producers, transmitters, receivers and possessors of child pornography but it did not adequately address distinctions <u>within</u> the class of receivers or possessors of child pornography. <u>See</u> <u>United States v. Stevens</u>, 29 F. Supp. 592, 607 (D. Alaska 1998) (reversed under a pre-<u>Booker</u> Guideline analysis). Specifically, there are obvious significant differences between the conduct of individuals who are guilty of receipt or possession of child pornography and the Guidelines do not adequately address those differences. <u>Id.</u> As a mere recipient of pornographic materials resulting solely from the government's unsolicited "advertisement", Mr. Lavely submits that his conduct was at the minimal end of the spectrum of conduct contemplated by the Guidelines and which Congress sought to prevent. <u>Id.</u> at 603, 607.

       Mr. Lavely's offense conduct had either no effect or a *de minimis* effect on the encouragement of the production and distribution of child pornography. There is no evidence that he was seeking child pornography when the government initiated contact with him through its undercover sting operation. In fact, at the time he was first targeted by the government, Mr. Lavely had not ordered material from C.R.T., the distribution operation investigated by the government, for almost four years. In addition, there is no evidence that Mr. Lavely ever transmitted or distributed pornographic images or traded such images with other individuals. There is also no indication that Mr. Lavely ever produced child pornography or attempted to communicate with any of the individuals who appeared in child pornography. The offense to

which Mr. Lavely pleaded guilty did not involve his direct physical or face to face contact with any person. Mr. Lavely is not one of the offenders for whom collection of child pornography is a supplement to the molestation of children. Id. at 604. Mr. Lavely is also not involved in one of the fundamental harms identified by Congress, specifically, the use of pornography to seduce child victims. Id. at 603.

Moreover, Dr. Barbara Schwartz, a forensic psychologist who has evaluated over a thousand sexual offenders or individuals diagnosed as sexually compulsive and who treated Mr. Lavely in weekly individual therapy sessions for over a year at New England Forensic Associates, has concluded that based on both her research and her own clinical experience with individuals who acquire child pornography, Mr. Lavely's conduct falls outside of the "heartland" of the offense for which he was charged. See Dr. Schwartz's letter dated June 30, 2005 attached hereto as Exhibit 1. Specifically, according to Dr. Schwartz, Mr. Lavely's conduct is radically different from an offender who uses child pornography to feed his sexual arousal and molest children. In her expert opinion, Mr. Lavely is not a pedophile. See Transcript of Dr. Schwartz's testimony at Mr. Lavely's sentencing hearing on February 8, 2005, attached hereto as Exhibit 2, at 39. Unlike offenders who access or purchase child pornography to satisfy their pedophilia, Dr. Schwartz believes that Mr. Lavely displayed aspects of a "curiosity seeker" in his purchase of the material from the government's sting operation. Id. at 40; see also Exhibit 1. She also concludes that he presented aspects of a "disorganized and curious type" when he accessed material on the internet. According to Dr. Schwartz, a "disorganized type" typically downloads large amounts of pornography of all types, rarely knowing everything that is contained in the electronic files. In Dr. Schwartz's opinion, Mr. Lavely's offense conduct was not the type envisioned by the individuals who passed laws addressing child pornography.

In similar cases, courts have considered the testimony of clinical psychologists in determining whether a defendant's conduct fell outside of the heartland of the offense. <u>See</u> <u>United States v. Parish</u>, 308 F.3d 1025, 1030 (9th Cir. 2002). In <u>Parish</u>, the defendant pleaded guilty to possession of child pornography resulting from the discovery of approximately 1,300 images contained on a laptop computer to include depictions of graphic, violent sexual exploitation of very young children. In addition, a search of the defendant's e-mail account revealed an exchange of messages with a 15 year-old female. During the defendant's sentencing hearing, a clinical psychologist who had examined the defendant testified that his conduct was significantly less serious than that of offenders in other cases involving possession of child pornography, that most of the individuals convicted under the federal child pornography possession statute with whom he was familiar had been "a lot more extreme in terms of what they've done with child pornography and the Internet" and that the content of the images in the defendant's possession was "pretty minor" compared to the content of images possessed by other offenders. <u>Id</u>. In upholding the sentencing court's decision to grant an eight-level downward departure, the Ninth Circuit found that the court did not abuse its discretion in determining that the defendant's conduct was outside the heartland of the offense based on the expert's testimony and its own sentencing experience.

As in <u>Parish</u>, the Court in this case should favorably consider Dr. Schwartz's expert findings that Mr. Lavely's offense conduct falls outside of the "heartland" of the offense and impose a sentence below the advisory Guideline sentencing range.

II.     This Court should Depart Downward from the Guideline Sentencing Range

    a.     Downward Departure Analysis

A court may depart from the applicable advisory Guideline sentencing range if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. §5K2.0 (Policy Statement). In Koon v. United States, 518 U.S. 81 (1996), the Supreme Court explained how a district court should decide whether to depart from the range prescribed in the particular Guideline. Id. at 93-94. First, the district court should identify what features of the case make it unusual. Id. at 95. Next, the court must determine whether the ground on which it is contemplating a departure is forbidden, encouraged, or discouraged by the advisory Guidelines. Id. The court may depart on an encouraged ground as long that encouraged ground is not already taken into account by the particular offense guideline. Id. at 96. If a factor is discouraged, or encouraged but already taken into account, the district court may depart if the factor is "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. If the Guidelines do not mention that factor at all, a district court must consider whether this particular factor warrants departure. Id. Therefore, an offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable advisory Guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree or distinguishes the case from the "heartland" cases covered by the Guidelines. Mr. Lavely submits that a downward departure from the applicable advisory Guideline sentencing range is warranted based on his extraordinary characteristics and the atypical circumstances involved in

this case and because his offense conduct was outside the "heartland" that U.S.S.G. §2G2.2 was intended to punish.

  b.    Downward Departures in the United States District Court for the District of
        Massachusetts in Cases Involving Possession or Receipt of Child Pornography

There is no lack of cases involving possession or receipt of child pornography in which the United States District Court for the District of Massachusetts has departed downward from the applicable Guideline sentencing range and imposed probation based on grounds cited by Mr. Lavely. For example, in United States v. Smith, 89-00185, the defendant pleaded guilty to receiving a videotape depicting minors engaged in oral-genital and genital intercourse, masturbation and lascivious exhibition of their genitals. In its Objection to the Presentence Report, the government informed the court that the defendant, who was a school teacher who had a longstanding sexual attraction to young girls, "amassed and maintained a voluminous collection of materials depicting children, which he assiduously strove to enlarge over at least a decade, creating a fictitious identity located in California to accomplish this goal." The government also submitted that a search of the defendant's house revealed that the defendant not only desired to indulge his fantasies involving the abuse of children, but enjoyed collecting sadistic and degrading pornographic depictions of adult women, such as torture films.

  Judge Woodlock departed down from the applicable Guideline range of 12 to 18 months imprisonment and imposed a sentence of 60 months probation, community service, participation in counseling, and no unsupervised conduct with children under the age of 14. As grounds for the departure, Judge Woodlock reasoned:

> As [a] passive recipient of materials, defendant is at [the] very minimal end of the wide and disparate spectrum of conduct comprehended by the guidelines; conduct involved no acting out despite ample opportunities. It does not appear that the

Sentencing Commission had this type of conduct in mind when establishing this
guideline.  Straight probationary sentence will provide greatest protection for
public by extending maximum length of supervision to 60 months as opposed to
guideline maximum of 54 months (18 months incarceration + 36 months
supervised release).

In <u>United States v. Lochiatto</u>, 01-10432, the defendant pleaded guilty to possessing a

compact disk that contained images of child pornography in violation of 18 U.S.C.

§2252A(a)(5)(B).  Judge Lindsay departed downward from a Guideline range of 27 to 33 months

imprisonment to probation for a term of five years and participation in a sex offender treatment

program based on a combination of the defendant's extraordinary rehabilitative efforts and

aberrant behavior.  As in Mr. Lavely's case, the defendant in <u>Lochiatto</u> underwent psychological

and sexual assessment testing to include the Abel Screening Assessment and the Penile

Plethysmograph procedure and participated in therapy sessions at New England Forensic

Associates in order to understand his mental illness and minimize his risk of re-offending.  The

defendant in <u>Lochiatto</u>, as in Mr. Lavely's case, was found by his treating psychologists, one of

whom was Dr. Carol Ball, to not present as a predator and to be at a very low risk to re-offend.

In <u>United States v. McHatton</u>, 98-10161, the defendant pleaded guilty to possessing

multiple images of child pornography contained on his computer disks.  The investigation

resulting in the defendant's conviction began after the police discovered the transmission of

several computer files containing sexually explicit images of children under the age of 18 from

the defendant's registered internet account.  Judge Wolf departed downward from the Guideline

imprisonment range of 12 to 18 months to 60 months probation, including four months home

confinement, continued sex offender treatment, and no internet access or unsupervised contact

with boys between the ages of 10 to 18 years of age.  Judge Wolf based his decision on the

defendant's extraordinary rehabilitation and "the fact that the defendant could not receive

comparable treatment in prison which would mean that a prison sentence might enhance the recidivism in this possession of child pornography case."

In <u>United States v. Toupense</u>, 01-40005, the defendant pleaded guilty to possessing hard drives and computer disks that contained images of child pornography in violation of 18 U.S.C. §2252A(a)(5)(B). Judge Gorton granted a downward departure from the Guideline range of 27 to 33 months imprisonment to probation for a term of five years, six months in a Community Correction Center and six months in home detention with electronic monitoring. The court departed from the Guideline range based upon the defendant's extraordinary rehabilitation, aberrant behavior and a combination of sentencing factors. The defendant's rehabilitation included participation in individual psychological therapy sessions at Addiction Consulting Corporation in Worcester, Massachusetts, participation in a twelve-step program, and medication. As in Mr. Lavely's case, the defendant in <u>Toupense</u> was not diagnosed as a pedophile or found to be a danger to the community.

In <u>United States v. Clow</u>, 99-10250, the defendant pleaded guilty to possession of child pornography pursuant to 18 U.S.C. §2252A(a)(5)(B) after being caught in a government sting operation. The defendant had sent several images of child pornography to an undercover police officer in an internet chat room. A subsequent search of the defendant's computer revealed several images of child pornography. Judge Tauro departed downward from an imprisonment range of 27 to 33 months and imposed probation for a term of five years and participation in sex offender treatment based on the defendant's aberrational behavior, and a combination of factors to include employment history, charitable work and public service, emotional condition and rehabilitation through treatment at New England Forensic Associates. As part of his evaluation and treatment, the defendant in <u>Clow</u>, as in Mr. Lavely's case, participated in weekly

psychological counseling and underwent a Penile Plethysmograph Laboratory Study and the Abel Screening Assessment. However, unlike Mr. Lavely, the test results of the defendant in Clow revealed the presence of a "pedophilic problem" and inappropriate arousal relating to underage males.

In United States v. Kosofsky, 99-10187, the defendant pleaded guilty to possession of child pornography following an international investigation which resulted in the discovery of multiple pornographic images of pre-teen male and female subjects located on the defendant's computer disk drive. Judge Lindsay departed downward from a Guideline sentence range of 21 to 27 months imprisonment to three years probation, participation in mental health counseling, community service and no unsupervised contact with minors, based on a combination of the defendant's medical and psychological history, his innocent motive in committing the offense, and psychological testing which demonstrated that the defendant was not a pedophile or a sexual predator.

In United States v. Wong, 99-10141, the defendant pleaded guilty to possessing a computer disk that contained more than ten images of child pornography. The defendant's conviction resulted from the government's undercover sting operation which targeted purveyors and purchasers of child pornography who used the internet and underground publications to obtain their illegal material. The undercover operation included a web site that advertised the sale of child pornography and the distribution of catalogs containing selections with age and model descriptions of child pornography from which to choose. The defendant responded to the undercover advertisement and selected several video tapes depicting images of child pornography. After the delivery of the videotapes to the defendant was completed, a search of the defendant's residence was executed which revealed multiple images of child pornography

contained on one of the defendant's computer disks. Judge Lindsay departed from the Guideline range of 21 to 27 months imprisonment and imposed a sentence of six months imprisonment based on a combination of the defendant's rehabilitative efforts and his impaired psychological state. The defendant's post-offense treatment consisted of five months of forensic evaluation for evidence of pedophilia and participation in bi-weekly individual therapy. In comparison, Mr. Lavely has undergone treatment and evaluation at New England Forensic Associates since December 2003.

The above cited cases from the District Court for the District of Massachusetts demonstrate that downward departures have been granted and sentences of probation imposed in several cases that were factually similar to that of Mr. Lavely, and in some instances, where the offense conduct was substantially more egregious than that which occurred in this case and where the rehabilitative efforts were less compelling than that which were undertaken by Mr. Lavely.

      c.      <u>Grounds for Downward Departure in Mr. Lavely's Case</u>

      1.      <u>Extraordinary Post Offense Rehabilitation</u>

Mr. Lavely has engaged in an extensive series of actions designed to accept responsibility in this matter and to gain insight as to the reasons for his criminal conduct. Since he was first confronted by the government in relation to this matter, Mr. Lavely has exhibited extraordinary rehabilitative efforts to include his voluntary participation in the Abel Screening Assessment and the Penile Plethysmograph procedure, as well as a polygraph examination. In addition, Mr. Lavely has attended weekly individual therapy sessions for over a year at New England Forensic Associates under the direction of Dr. Barbara Schwartz, a forensic psychologist who specializes in treating sex offenders. <u>See</u> Exhibit 1; <u>see also</u> Exhibit 2 at 26-27.

It is well-established that presentence rehabilitation is a recognized basis for downward departure from the federal Sentencing Guidelines. United States v. Maier, 975 F.2d 944, 948 (2d Cir. 1992); United States v. Workman, 80 F.3d 688, 701-02 (2d Cir. 1996); United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997) (holding that "a defendant convicted of receiving child pornography may be entitled to a downward departure based on extraordinary rehabilitative efforts"). Mr. Lavely submits that the extraordinary rehabilitative efforts that he has exhibited in this case should be favorably considered by the Court in allowing a downward departure pursuant to §5K2.0 of the advisory Guidelines.

From the day he was first confronted by law enforcement agents in relation to this matter, Mr. Lavely has accepted responsibility for his misconduct and expressed his remorse clearly and unequivocally. Mr. Lavely assisted government authorities in the prosecution of his misconduct in this case by consenting to an interview with law enforcement officers without the benefit of counsel or the protection of a proffer agreement immediately upon being confronted by government agents on April 23, 2003. Mr. Lavely also provided written consent for law enforcement agents to search his vehicle, laptop computer, and residence and to seize any videotapes that contained illegal material. He also accompanied government agents to his residence where he assisted them in their search. Mr. Lavely's prompt acceptance of responsibility and subsequent plea of guilty also permitted the government and the Court to avoid preparing for trial and allocate its resources more efficiently.

In addition, Mr. Lavely has voluntarily undergone psychological evaluation and treatment at New England Forensic Associates since December 2003. He was initially evaluated by Dr. Carol Ball, a licensed psychologist, who administered the Abel Assessment of Sexual Interest and the Penile Plethysmography Laboratory Study. Dr. Schwartz's analysis of Mr. Lavely's test

results indicate that he does not demonstrate deviant arousal or deviant sexual interest in children under the age of 13. <u>See</u> Exhibit 2 at 16, 18.

Mr. Lavely also has attended weekly individual therapy sessions with Dr. Schwartz since April 2004. Much of Mr. Lavely's therapy has been devoted to understanding how the consumption of child pornography perpetuates the abuse of children. He has developed a Relapse Prevention Plan, which, according to Dr. Schwartz, should prevent any future reoccurrence of the conduct for which he was charged. <u>See</u> Exhibit 1. Dr. Schwartz also notes that Mr. Lavely has been exceptionally compliant and has taken a serious approach to his course of treatment. <u>See</u> Exhibit 2 at 29.

In evaluating Mr. Lavely's risk to re-offend, Dr. Schwartz has found that Mr. Lavely's test results were comparable to offenders with a very low recidivism rate. <u>Id</u>. at 27-28. In addition, Dr. Schwartz has concluded that Mr. Lavely's risk to re-offend is further mitigated by the fact that he has been a responsible member of his community with no previous criminal behavior, he has been a stable husband, father and grandfather, and he has positively responded to supervision. Most importantly, Dr. Schwartz found that there is no evidence that Mr. Lavely has pedophilic tendencies, he does not present a risk to the public, and in her opinion, he will not access material depicting child pornography again. <u>See</u> Exhibit 1.

As she previously testified in this matter, Dr. Schwartz feels that Mr. Lavely would best be managed in the community with continued counseling and that a jail sentence is counter-indicated based on the results of her evaluation and treatment. <u>See</u> Exhibit 2 at 29 – 30. According to Dr. Schwartz, incarceration would deprive Mr. Lavely of critical sex offender treatment and would do very little to lower his recidivism rate after he is released into the community. <u>Id</u>. Based on Dr. Schwartz's findings, Mr. Lavely submits that his treatment needs

will be best served by a period of probation with continued psychological counseling. <u>See</u>
<u>United States v. Ranum</u>, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005)(finding that "in some cases,
a defendant's educational, treatment, or medical needs may be better served by a sentence which
permits the offender to remain in the community"); <u>see also</u> <u>United States v. Jones</u>, 352 F. Supp.
2d 22, 26 (D. Me. 2005) (holding that "the marginal protection to the public afforded by a few
more months in prison is more than offset by the increased risk upon this defendant's later
release after the interruption of his treatment and other regimens. The sentence [below the
advisory Guidelines sentence] I contemplate here will in all likelihood better protect the public
over the long term than the Guidelines sentence").

In addition to his voluntary participation in extensive psychological treatment and
therapy sessions, Mr. Lavely voluntarily underwent a polygraph examination to measure the
truthfulness of his responses relating to the pending state criminal charges of inappropriate
touching of adolescent females at a theatre company in Stoughton, Massachusetts. <u>See</u>
Polygraph Report attached hereto as Exhibit 3. The polygraph examination was performed on
March 26, 2005 by Dennis J. Peloquin, a licensed polygrapher who has conducted polygraph
examinations of sexual offenders under the Federal Probation Department's supervision. Mr.
Peloquin has a contract with the Federal Probation Department and has conducted many
polygraph examinations for federal authorities.

During the polygraph examination, Mr. Lavely denied deliberately touching any of the
females involved in the Stoughton allegations in a sexual manner or deliberately touching their
breasts and or buttocks. In Mr. Peloquin's opinion, there was no deception indicated in Mr.
Lavely's responses. The results of Mr. Lavely's polygraph examination are significant, as they
reinforce Dr. Schwartz's conclusion that Mr. Lavely did not knowingly touch adolescent females

for his personal sexual gratification and confirm her findings that he does not present a danger to the public. See Exhibit 1; see also Exhibit 2 at 27-28.

Mr. Lavely submits that his extraordinary post-offense rehabilitative conduct warrants a downward departure. However, if the Court determines that Mr. Lavely's actions do not merit a downward departure, they certainly should be considered as part of his personal history and characteristics pursuant to §3553(a) in the Court's determination of a sentence that will protect the public and which is sufficient but not greater than necessary to comply with the purposes of sentencing.

2.    Mr. Lavely's Family Ties and Responsibilities

Although family ties and responsibilities are not ordinarily relevant factors in the court's determination whether a sentence should be outside the applicable Guideline range, they may be grounds for downward departure if "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." U.S.S.G. §5H1.6; United States v. Kapitzke, 130 F.3d 820, 822 (8th Cir. 1997); Koon, 518 U.S. at 96. Mr. Lavely submits that his family ties and responsibilities, specifically his financial obligations and care-taking responsibilities to his autistic grandson, are exceptional and sufficiently different from other similarly situated defendant's facing incarceration and, therefore, warrant a downward departure from the applicable advisory Guideline sentencing range.

Mr. Lavely has been married to his wife, Martha Lavely for thirty-eight years. Mr. Lavely and his wife enjoy a very loving, supportive relationship. They have two children, Cinda Rousculp, age 33, and David Lavely, age 31, who live locally and who are extremely supportive of their father. The Personal and Family Data section of the Presentence Report, as well as the letters from Mr. Lavely's family members contained in the Defense Submission to the

Presentence Report previously filed with the court, demonstrate the special relationship that Mr.

Lavely has with his family and their dependence on him for emotional and financial support.

The letters also describe the many personal challenges that Mr. Lavely has guided his family

through, including the recent death of his father. Through each adversity, Mr. Lavely has

displayed tremendous strength and has placed the needs of his family ahead of his own.

It is clear after reading Martha Lavely's letter to the Court that she is deeply concerned

about her family's emotional and financial stability in the event that her husband is removed

from their household. She describes the tremendous love and support that her husband has

provided her and their extended family. However, she is also extremely fearful of the bleak

future she and her family will undoubtedly face if Mr. Lavely is no longer a contributing member

of their household.

In addition, Mr. Lavely provides substantial financial and emotional support to his son,

David Lavely, his daughter-in-law, Stacey Lavely, and their two year old son, Jagger. See letter

from Stacey and David Lavely attached hereto as Exhibit 4. Jagger, has a developmental history

significant for difficulties in communication skills, social interaction and self-regulation. He was

recently evaluated by Dr. Rafael Castro, a pediatric neuropsychologist, and diagnosed with

Pervasive Developmental Disorder/Autism Spectrum Disorder. See Report of

Neurodevelopmental Consultation attached hereto as Exhibit 5. As a result of his autism, Jagger

requires in-home developmental services for up to 30 hours per work. When Jagger reaches

three years of age, a determination will be made whether he will need to attend a special pre-

school for autistic children which costs approximately $80,000 per year. In addition, Jagger is

currently being treated by a physician in Connecticut in an effort to build up his immune system.

Visits to this physician result in exorbitant medical bills which are not covered by Stacey and David Lavely's medical insurance.

David Lavely lost his job in July 2004. His wife, Stacey, works from their home so that Jagger's home-based developmental programs may be administered. As a result of their desperate financial situation, Anthony Lavely has provided his son's family approximately $18,000 since July 2004 to help pay for their various household and medical expenses. Although David Lavely has performed contract work since he lost his full-time job a year ago, he and his family continue to rely on Anthony Lavely for financial support. Mr. Lavely submits that if he is imprisoned, he will most likely lose his job and will be unable to provide the critical financial assistance that his son's family desperately needs and that Jagger's continued therapeutic treatment requires.

Moreover, as demonstrated in Stacey and David Lavely's letter to the Court, Mr. Lavely has formed an incredibly strong bond with his grandson which is a critical factor in Jagger's continued development. Mr. Lavely is an important fixture in Jagger's life. In fact, one of the few words that Jagger is able to say is "Tony". As Stacey and David Lavely note in their letter, Jagger has "blossomed" as a result of the time he spends with his grandfather. A sentence that includes imprisonment would remove Mr. Lavely from Jagger's life at a critical stage in his development and potentially compromise the progress that he has made.

Mr. Lavely is not seeking sentencing relief merely because his family will face the typical disruption and difficulties inherent in a sentence that includes imprisonment. Rather, as clearly demonstrated in the letters submitted to the Court, imposing a sentence within the advisory Guideline sentencing range will cause a substantial and direct impact on Mr. Lavely's family based on their dependence on him for essential care-taking and financial support.

Moreover, Mr. Lavely's integral role in financially supporting his son's family and assisting his autistic grandson's development present exceptional circumstances that warrant a downward departure. However, if the Court determines that Mr. Lavely's family ties and responsibilities do not merit downward departure, they certainly should be considered in assessing Mr. Lavely's history and characteristics pursuant to §3553(a).

### 3.    The Government's Suggestive Investigative Technique

The government's sting investigative technique which resulted in the criminal charges brought against Mr. Lavely take this case out of the heartland, and therefore, provides Mr. Lavely an additional ground to seek a downward departure. Specifically, it was the government who initiated the conduct for which Mr. Lavely was charged and it did so almost four years after Mr. Lavely's last purchase from C.R.T., the distribution business that was investigated by the government. In addition, during his four years of inactivity, Mr. Lavely gave no indication that he wanted to receive images of child pornography or that he was interested in viewing child pornography. He placed no additional orders with C.R.T. and he did not initiate any contact with the distribution business during that time frame. The facts of this case demonstrate that Mr. Lavely would not have committed the crime for which he pled guilty without the government's encouragement.

Courts have held that "imperfect entrapment," described as "aggressive encouragement of wrongdoing, although not amounting to a complete defense," is a proper ground for downward departure pursuant to §5K2.12. United States v. Garza-Juarez, 992 F.2d 896, 912 (9th Cir. 1993); United States v. Bala, 236 F.3d 87, 91 (2nd Cir. 2000) ("we can find nothing in the guidelines to prohibit a district court from considering conduct by the government that does not

give rise to an entrapment defense but that is nonetheless "aggressive encouragement of wrongdoing"); United States v. Amparo, 961 F.2d 288, 292 (1st Cir. 1992); United States v. Giles, 768 F. Supp. 101, 104 (S.D.N.Y. 1991) (holding that a downward departure was warranted because the manner in which the defendant was "set up" to commit the crime by the government's agent was not a factor adequately taken into consideration by the Sentencing Commission in formulating the Guidelines); United States v. McClellan, 72 F.3d 717, 725 (9th Cir. 1995) (holding that defendants who are predisposed but who are then pressured unduly by the government to go forward with the offense are eligible to assert imperfect entrapment). Courts have also recognized that a downward departure may be appropriate when government agents use persuasion alone, and not threats.  Garza-Juarez, 992 F.2d at 912.

In this case, even though the government's conduct did not establish the complete defense of entrapment, its sting investigative technique removed the case from the heartland. Specifically, the government, through its undercover sting operation, initially proposed the illegal activity which resulted in the charges against Mr. Lavely and initiated contact with Mr. Lavely after he had not purchased materials from the distribution business in nearly four years. In addition, the specific wording of the government's advertisement was an obvious attempt to persuade its target, Mr. Lavely, to purchase illegal material by offering him a "last chance" to buy products at "huge savings."

Mr. Lavely submits that the evidence of these investigative techniques and imperfect entrapment in this case establish legitimate grounds for downward departure because it shows that he is "both less morally blameworthy than an enthusiastic [defendant] and less likely to commit other crimes if not incarcerated." See Garza-Juarez, 992 F.2d at 913 n.1. Accordingly, the government's conduct which encouraged Mr. Lavely to commit the crime for which he

would not have otherwise committed, although not amounting to a complete defense, warrants a downward departure. In the event that the Court does not find that the government's conduct merits a downward departure, such conduct should certainly be considered by the Court as part of its assessment of the nature and circumstances of the offense and history and characteristics of the defendant pursuant to 18 U.S.C. §3553(a).

### 4.    Vulnerability to Victimization or Abuse in Prison

Mr. Lavely also submits that given his age, passive demeanor, absence of a criminal record, and offense for which he will be sentenced, he would be at risk for abuse in prison and that such risk warrants a downward departure pursuant to §5K2.0 of the Guidelines.

A defendant's unusual susceptibility to abuse by other inmates while in prison has been held by courts as a ground for downward departure. Koon v. United States, 518 U.S. 81, 111-12 (1996). Courts have found that a defendant may be susceptible to abuse in prison based on a combination of factors to include the defendant's physical stature, demeanor, naiveté, criminal history, and the nature of the offense for which he was convicted. United States v. Parish, 308 F.3d 1025, 1031-32 (9th Cir. 2002). Controlling case law has also held that a sentencing court may take into account all of the circumstances of the crime itself as well as the characteristics of the defendant in making an appropriate determination whether the defendant is susceptible to abuse in prison. See Koon, 518 U.S. at 112. In addition, courts have relied on the opinions of experts who have treated defendant sex offenders in determining whether the individual would be susceptible to abuse in prison. Parish, 308 F.3d at 1031.

In this case, Mr. Lavely is a sixty-one year old grandfather who has no prior criminal convictions. He is caring, soft-spoken, displays a passive, non-threatening demeanor and is not

physically imposing. In addition, Mr. Lavely pleaded guilty to receipt of child pornography, an offense which carries an obvious social stigma which will be magnified in prison. Courts have concluded that "the likelihood of abuse by other prisoners as a result of the crime for which [the defendant] was convicted, when considered with [the defendant's] individual characteristics, is sufficient to permit a departure for susceptibility for abuse." See Parish, 308 F.3d at 1032; see also Koon, 518 U.S. at 112 (recognizing that "emotional outrage" about the offense could support a downward departure for susceptibility to abuse in prison).

Most compelling is the opinion of Dr. Schwartz, a forensic psychologist who has personally evaluated over a thousand individuals convicted of sexual assault or diagnosed as sexually compulsive and who has evaluated and treated Mr. Lavely in individual therapy sessions for over a year. She believes that Mr. Lavely could be victimized if he is incarcerated. See Exhibit 1. According to Dr. Schwartz, Mr. Lavely has no familiarity with "the con code" and could be easily manipulated, blackmailed, intimidated or worse by inmates who would target him as a sex offender. Dr. Schwartz further opines that Mr. Lavely might be forced to spend his entire sentence in Protective Custody where he would be unable to access programs or treatment.

Taking into account the realities that Mr. Lavely would face if he is imprisoned based on his age, demeanor, absence of a criminal record and the nature of the offense for which he pleaded guilty, the Court should grant a downward departure based on Mr. Lavely's susceptibility for abuse in prison. Mr. Lavely submits that his vulnerability to abuse in prison is also a relevant factor relating to his personal history and characteristics that the Court should favorably consider as part of its determination of an appropriate sentence pursuant to §3553(a).

5.    Combination of Grounds Justifying Downward Departure from the Advisory
Guidelines Sentencing Range

It is well settled that should the Court determine that each of the above traditional

departure grounds taken separately is insufficient to warrant a downward departure in this matter,

the Court may determine that a downward departure is in fact warranted based upon a

combination of those grounds, and the mitigating factors relating thereto. United States v. Sklar,

920 F.2d 107, 117 (1st Cir. 1990); United States v. Speight, 726 F. Supp. 861, 870 (D. D.C.

1989); United States v. Hancock, 95 F. Supp. 2d 280, 288 (E.D. Pa. 2000). The advisory

Sentencing Guidelines also acknowledge that a combination of factors could distinguish a case

from the heartland of cases. U.S.S.G. §5K2.0. Accordingly, Mr. Lavely submits that the

combination of his extraordinary post offense rehabilitation, his exceptional family ties and

responsibilities, the government's suggestive investigative technique, and his vulnerability to

victimization in prison remove this case from the heartland of similar cases and therefore, a

downward departure is warranted.

III.    Post Booker/Fanfan Arguments Pursuant to 18 U.S.C. §3553(a) for an Appropriate
Sentence of Probation and Continued Psychological Treatment

On January 12, 2005, the United States Supreme Court in United States v. Booker, 125 S.

Ct. 738 (2005), held that the federal Sentencing Guidelines were unconstitutional. The Court

found that the mandatory nature of the Guidelines violated the Sixth Amendment because it

obligated judges to find facts which increased a defendant's sentence beyond the range required

by a jury's verdict or a plea of guilty. This constitutional defect required severance of the

provisions of the Sentencing Reform Act of 1984, namely 18 U.S.C. §3553(b)(1), that made the

Guidelines mandatory. The Guidelines are now to be deemed "advisory," such that courts are to

"consider" Guidelines ranges but are permitted to tailor sentences in light of other statutory concerns. United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. 2005) (advisory Guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence").

As a result of the Supreme Court's decision in Booker, Section 3553(a) remains, requiring sentencing courts to consider a number of factors, including the nature and circumstances of the offense, and the history and characteristics of the defendant. § 3553(a)(1). The sentencing court must also weigh the purposes of sentencing set forth in the Sentencing Reform Act of 1984, including the need for the sentence to reflect the seriousness of the offense, deter future criminality, protect the public, and provide the defendant with needed training, medical care, or other correctional treatment. See 18 U.S.C. §3553(a)(2)(A-D).

In accordance with the directives established by the Court in Booker, this Court must consider the advisory Guideline range as well as all of the §3553(a) factors, many of which, such as the history and characteristics of the defendant, the Guidelines "either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005). In addition to the grounds cited above in support of his request for downward departure, Mr. Lavely submits that his education and employment record, as well as his outstanding military service should be considered by this Court pursuant to §3553(a) in determining an appropriate sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing.


a.    Mr. Lavely's Education and Employment Record

Mr. Lavely received undergraduate and graduate degrees in electrical engineering from Drexel University in 1972 and 1978, respectively. He also earned an MBA from Babson College

in May 1993. Mr. Lavely presently works as a senior manager for Mercury Computer Systems ("Mercury") in Chelmsford, Massachusetts. He has been employed with Mercury since 1990. Mercury supplies critical computer components for advanced systems such as real time medical imaging, signal intelligence, and military reconnaissance.

Mr. Lavely has four senior hardware engineers whom he supervises and ensures that they comply with all of Mercury's regulations in dealing with defense contractors. In addition, Mr. Lavely is an internal auditor, helping to maintain Mercury's quality control certification that is required to conduct business with defense contractors. He also serves on several "core teams" at Mercury, which direct projects as they proceed from concept to product. Mr. Lavely also works with sales associates and field application engineers when they work with defense contractors in system design.

Mr. Lavely's integral role at Mercury and the value of the services he provides to its customers is evidenced in a letter to the Court from Dean Holman, a principal hardware engineer at Mercury. See Letter from Dean Holman attached as Exhibit 3(r) in Defense Submission for Pre-Sentence Report Regarding Background of Anthony Lavely. In his letter, Mr. Holman explains how Mr. Lavely's performance at Mercury has improved the lives of countless people who benefit from the company's medical and military technology and that losing Mr. Lavely would severely impact Mercury's ability to continue to provide critical products to its customers.

Mr. Lavely acknowledges that his employment with Mercury will likely end if his sentence includes imprisonment and that at age sixty-one, he would have considerable difficulty finding meaningful employment in the future. Consequently, a sentence of probation and continued psychological treatment would not only benefit Mr. Lavely, but also his family, his employer, his customers and his community.

Mr. Lavely submits that his educational background and outstanding employment record should be favorably considered by this Court in evaluating his personal history and characteristics pursuant to §3553(a).

### b.    Mr. Lavely's Military Service

Mr. Lavely voluntarily enlisted in the U.S. Navy in 1963 for a term of four years. His naval career consisted of approximately eighteen months of training, beginning in San Diego, California for twelve weeks of boot camp and then six weeks of instruction in electronics at Treasure Island, California. Mr. Lavely was then stationed in Naples, Italy for two years and subsequently spent one year on a minesweeper in the Guantanamo Bay area.

At the end of his initial enlistment contract, Mr. Lavely was released from active duty and voluntarily extended his enlistment for four months in April 1966. Following his active duty service, he was transferred to the U.S. Naval Reserve, from which he was honorably discharged in 1969. During the course of his enlistment in the Navy, Mr. Lavely attained the rank of ETN2 (Electronics Technician, Petty Officer Second Class) and was awarded the National Defense Service Medal.

Pursuant to §3553(a), the Court should favorably consider Mr. Lavely's honorable service to his country in the United States Navy in evaluating his history and personal characteristics.

### IV.    Conclusion

For the foregoing reasons, Mr. Lavely requests that the Court impose a sentence of probation and continued psychological treatment based on traditional grounds for downward

departure from the applicable advisory Guideline sentencing range cited above, as well as post-

Booker/Fanfan factors pursuant to 18 U.S.C. §3553(a).

                                        Respectfully Submitted,
                                        ANTHONY LAVELY

                                        By his attorneys,


                                        Stephen R. Delinsky  (BBO #119120)
                                        Andrew R. McConville (BBO #632804)
                                        ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
                                        One International Place, 18th Floor
                                        Boston, Massachusetts 02110
DATED: July 12, 2005                    Telephone No.:  (617) 342-6800