UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.  ) <br> ) <br> ANTHONY LAVELY ) <br> ) | CRIMINAL NO. 04 CR 10025-NG |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT, ANTHONY LAVELY'S MOTION TO COMPEL
DISCLOSURE OF COPIES OF VIDEOTAPES SEIZED BY THE
GOVERNMENT AND INFORMATION REGARDING THE DISPOSITION OF
OTHER CASES RESULTING FROM THE C.R.T. UNDERCOVER OPERATION**

Defendant Anthony Lavely ("Mr. Lavely") submits that this Court should direct the government to provide the defense with copies of all videotapes seized by the government from Mr. Lavely's residence which originated from C.R.T., as well as information regarding the disposition of other cases resulting from the C.R.T. undercover operation, specifically, the name of each defendant, the Federal District Court where the action was brought, the specific charges for each defendant, the docket numbers for each defendant, and the disposition of these cases. This request for necessary and relevant information and material is directly in response to issues raised by the Court during previous hearings and is essential for the defense to prepare for sentencing.

**PROCEDURAL HISTORY**

During the most recent sentencing hearing held on July 27, 2005, the Court identified several issues that it deemed relevant in its determination of an appropriate sentence in this matter. Specifically, the Court made inquiries regarding the content of the videotapes previously ordered by Mr. Lavely from C.R.T. which were seized by the

{K0309266.1}

government from Mr. Lavely's residence, and the disposition of the other cases resulting from the government's undercover investigation.

Following the hearing, counsel for the government informed Mr. Lavely's attorneys that in the two boxes of videotapes seized from Mr. Lavely's home, there were twenty-nine (29) videotapes that originated from C.R.T. See Government's Letter dated August 5, 2005 attached as Exhibit 1. The government stated that it reviewed fourteen of the seized tapes and determined that seven tapes contained images of chargeable child pornography.

Mr. Lavely's attorneys made repeated requests to the government to provide copies of the seized videotapes that originated from C.R.T. in order for the defense to thoroughly analyze them in preparation for the next scheduled sentencing hearing. See Defendant's Requests for Tapes attached as Exhibit 2. To expedite the production of the tapes to the defense, Mr. Lavely's counsel offered to reimburse the government for the cost of copying the tapes and agreed to sign a protective order restricting their use and disclosure.

Despite Mr. Lavely's repeated requests for discovery and the fact that on previous occasions the government provided the defense with copies of other material and images for its review, the government refused to provide the defense with copies of the seized videotapes, asserting that "there can be no dispute" regarding the ages of the individuals who appeared on the tapes. The government insisted that Mr. Lavely's attorneys view and copy the tapes themselves at Postal Inspector Richard Irvine's office at a time and date when Postal Inspector Irvine was available. See Government's Response to Request for Tapes attached as Exhibit 3.

On August 25, 2005, Mr. Lavely's attorney met with Postal Inspector Irvine at his office in Woburn, Massachusetts to inventory, review, and copy the tapes seized by the government. Mr. Lavely's attorney brought blank tapes with him so that he could make copies of the seized evidence for the defense to review in depth and to utilize in consultation with its expert before the sentencing hearing. The government provided one videotape recorder to Mr. Lavely's attorney to make duplicate copies of the twenty-nine seized videotapes that originated from C.R.T. The videotape recorder was only able to record in "real-time", therefore, the recording process could not be accomplished at a rapid rate. Consequently, it took Mr. Lavely's attorney approximately two hours to make a complete copy of one videotape. While Mr. Lavely's attorney was attempting to copy a second videotape, the government's videotape recorder became inoperative and could not be repaired. As a result, Mr. Lavely's attorney was able to copy only one out of the twenty-nine seized videotapes and briefly review portions of the tapes that, according to the government, originated from C.R.T. and contained images of child pornography. Based on the time it will take for the defense to personally copy the remaining twenty-eight tapes, the cost to Mr. Lavely will be exorbitant.

In addition to copies of the seized C.R.T. videotapes, Mr. Lavely requested that the government produce information regarding the disposition of cases resulting from the C.R.T. undercover operation. In discovery letters dated April 25, 2005, May 3, 2005, and August 22, 2005, Mr. Lavely's attorneys requested the number of arrests and/or convictions resulting from the undercover operation, the name of each defendant, the Federal District Court where the action was brought, the specific charges for each defendant, the docket numbers for each defendant, and the dispositions of the cases. See

Defendant's Discovery Letters attached as Exhibit 4. Mr. Lavely's requests for the production of information relating to the disposition of cases resulting from the C.R.T. undercover operation were made directly in response to issues raised by the Court in the two prior sentencing hearings.

Counsel for the government responded in a letter dated August 23, 2005 that after making some preliminary inquiries, he would make further efforts to obtain the requested information regarding the disposition of C.R.T. cases, but that he may not have the information available for the defense until after Labor Day. See Government's Response to Request for Disposition of C.R.T. Cases attached as Exhibit 5.

As a result of the government's failure to produce the relevant and necessary information and material requested by the defense that relate to the issues specifically raised during previous sentencing hearings, Mr. Lavely and his attorneys have been unable to properly prepare for the scheduled sentencing hearing and have no alternative but to seek relief from the Court.

## ARGUMENT

### I. THE GOVERNMENT MUST DISCLOSE COPIES OF THE C.R.T. TAPES SEIZED BY THE GOVERNMENT FROM MR. LAVELY'S RESIDENCE

Counsel for government has asserted that it will not provide Mr. Lavely with copies of the twenty-nine tapes that, according to the government, originated from C.R.T. and were seized from Mr. Lavely's residence. As justification for its refusal to provide copies of the tapes, the government stated that it was "not willing to copy 29 video tapes for an issue that will not be in dispute." See Exhibit 3. The government also stated that "there can be no dispute about the ages of the young girls in those tapes that we have concluded include chargeable pornography." Id.

The government's rationale for refusing to produce this relevant and necessary discovery to the defense is entirely without merit. First, the government provided the defense with copies of other images and material on previous occasions in this matter. To refuse to produce copies of essential discovery to the defense on the eve of the sentencing hearing is not only inconsistent with their past practices but will severely prejudice Mr. Lavely and his attorney's ability to prepare for sentencing. Second, to expedite the process, the defense has offered to reimburse the government for any expense incurred by the government in copying the videotapes. Therefore, the government cannot argue that it lacks the necessary financial resources to accomplish this task. Conversely, considering the substantial amount of time it will take for the defense to personally copy the remaining twenty-eight videotapes at the Postal Inspector's office, the cost to Mr. Lavely to accomplish this process will be outrageous. Third, the government brazenly presumes that because it has determined that the tapes depict minors and acts amounting to child pornography, the defense cannot reach a different conclusion based on an independent review by their own expert. Regardless of the government's conclusions, Mr. Lavely is entitled to have his attorneys and experts analyze the images on the tapes in their entirety at a time and location that is convenient for them in order to reach their own findings. Finally, Mr. Lavely's attorneys made a good faith effort to copy the tapes themselves but were prevented from doing so because the government supplied them with defective tape recording equipment.

By insisting that the defense review and copy this critical discovery at Postal Inspector Irvine's office in Woburn, the government has and will continue to cause the defense to needlessly expend exorbitant amounts of time, energy, and money and prevent

Mr. Lavely and his attorneys from properly preparing for the sentencing hearing.

## II. THE GOVERNMENT MUST PROVIDE INFORMATION REGARDING THE DISPOSITION OF OTHER CASES RESULTING FROM THE C.R.T. UNDERCOVER OPERATION

To this point, despite Mr. Lavely's repeated discovery requests, the government has failed to provide information regarding the disposition of other cases resulting from the C.R.T. undercover operation. Preliminary research conducted by the defense reveals that the government's C.R.T. investigation resulted in approximately 44 arrests and at least 26 convictions. Information regarding the charges that were brought in these cases and the sentences that were imposed is necessary to determine the range of offenders and their punishment and where Mr. Lavely's case fits within that spectrum. Most importantly, this requested information may support Mr. Lavely's argument for a sentence below the advisory sentencing guideline range.

The government obviously has the resources to uncover this critical information. Further delay in providing this information will continue to prevent Mr. Lavely and his attorneys from thoroughly analyzing these cases and preparing appropriate submissions to the Court for sentencing.

## CONCLUSION

For the above reasons, Mr. Lavely requests that his motion to compel disclosure of the requested discovery be granted.

                    Respectfully Submitted,
                    ANTHONY LAVELY
                    By his attorneys,

*/s/ Stephen R. Delinsky* (ARM)

Stephen R. Delinsky (BBO #119120)
Andrew R. McConville (BBO #632804)
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
One International Place, 18th Floor
Boston, Massachusetts 02110
Telephone No.: (617) 342-6800

DATED: September 1, 2005

{K0309266.1}                                    7