UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CRIMINAL NO. 04-10025-NG |
| ) | |
| ANTHONY LAVELY ) | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The government submits this supplemental sentencing memorandum in partial response to the recently received supplemental sentencing memorandum of defendant Anthony Lavely ("Lavely"). Additional arguments will be advanced at sentencing.

**1.   Prior Purchases from C.R.T.**

The government and Lavely agree that on April 23, 2003, when Lavely was confronted by Postal Inspectors after accepting delivery of his order of child pornography from the undercover C.R.T. operation, he had 30 video tapes at his residence that he had purchased from C.R.T. between 1997 and 1999. The government has order forms seized during the Mariscal/C.R.T. investigation that document $3,375 paid by Lavely for video tapes from C.R.T. Of the 30 tapes, one-third, or 10, contain chargeable child pornography.

The government does not dispute Lavely's description of the child pornography. It involved no adult involvement with children, and no intercourse of any sort. Nevertheless, one-third of the video tapes Lavely purchased from C.R.T. contain unlawful child pornography. It should also be noted that even the non-chargeable videos have an abusive aspect. It is not normal or healthy to the

development of young girls, many of them still prepubescent, to pose or dance in front of a video camera in a semi-nude or nude state.

There is also no dispute that the videos depict real children. Lavely placed at least 15 orders for video tapes over a period of almost exactly two years. After the first order, on each occasion he knew he would receive one or more video tapes depicting real children, some exhibiting their genital areas in a lascivious fashion, while other merely depicting young girls in various states of nudity.[1] After the first order, Lavely knew that his substantial purchases were supporting a business that exploited children for the sexual gratification of others. It is of little moment that Lavely claims his purchases were not so bad, that the child pornography could have been more explicit, more egregious. He knowingly supported an ongoing business that included the production of child pornography, and certainly involved in all cases the abusive sexual exploitation of children.

There is much we do not know about Lavely and his child pornography interests. But this much we do know. From 1997-1999, he spent over $3,000 on video tapes from C.R.T., one third of which

---

[1] Dr. Schwartz's contention that Lavely has only a normal attraction to sexually developed female adolescents is rebutted by the record. Most of the girls in the videos containing chargeable child pornography appear to be 9-12 years old, without sexual development. All of the girls in the CD's he ordered from the undercover C.R.T. operation were described as being 10-13 years old.

2

contained chargeable child pornography. From a date unknown until April 2003, he downloaded numerous images of child pornography from the Internet, including images of sexually explicit conduct that goes beyond the lascivious display of the genital area. [See Criminal Complaint, ¶¶29, 34]. And in the Spring of 2003 he ordered six CD's containing graphic, sexually explicit conduct, with the participants identified as "12 year old", "some even younger," young girls 11-13," and "a young cutie about 10."

### 2. The Undercover Purchase

Whatever Lavely can say about his support of Mariscal and C.R.T. between 1997 and 1999, he cannot say the same thing about the support he was giving to what he thought was the continued operation of C.R.T. in 2003. When Lavely's interests changed, assuming they changed, is subject to speculation, but his interests as reflected by his C.R.T. purchases appeared to change. Perhaps he was always interested in hard-core child pornography, but C.R.T. never offered him such choices in the early years. Or perhaps he moved toward an interest in hard-core child pornography between 1999 and 2003 when he collected child pornography from the Internet. The particulars are unimportant. What is important is that in 2003 he ordered hard-core child pornography from what he thought was the same C.R.T. business he had dealt with between 1997-1999. He sent $765 to a child pornography operation he knew from the product listing could produce child pornography on demand,

to fill a customer created script involving a 13 year old girl.

It should not be forgotten, with Lavely's focus on the 30 video tapes ordered between 1997 and 1999, that he is before this Court, not because of the 30 videos, but because of the six hard-core child pornography CD's he purchased from the undercover C.R.T. operation. It should also not be missed that Lavely is asking this Court to use its discretionary sentencing authority to his benefit, while he continues to mislead this Court about the seriousness of his actions. Incredibly, Dr. Schwartz reports in her October 19, 2005 letter to Attorney Delinsky [Ex. 4 to Defendant's Supplemental Sentencing Memo] the following statements from Lavely:

> Mr. Lavely told me that he ordered the last tape that resulted in his arrest because he had enjoyed looking at the models in the previous tapes produced by C.R.T. He did not believe that the explicit sexual scenes described were "real," if they existed at all. . . . Additionally he felt that if such scenes actually existed on the tapes, they would have "over 18" disclaimer on them. It basically never occurred to him that he would be viewing actual depictions of the sexual abuse of children, which would totally repulsive to him.

Dr. Schwartz calls Lavely naive. The government is not so generous in its assessment of Lavely and his minimization of his culpability. If it truthfully "never occurred to him that he would be viewing actual depictions of the sexual abuse of children," he must not be the same person who had sexually explicit child pornography on his computer, or the same person who read the undercover product descriptions that included the ages of the participants and the conduct depicted, and then sent $765 to the

4

undercover C.R.T. operation for six hard-core child pornography CD's.

The truth is that Lavely ordered hard-core child pornography because he wanted it, knowing full well that he was going to see actual young girls engaged in all sorts of explicit sexual conduct, and he was willing to pay $765 to have it.  This Court should not reward his untruthfulness with the favorable sentence he asks this Court to impose.

### 3. Other C.R.T. Customer Prosecutions

The government provided this Court with sentencing information from 34 federal child pornography prosecutions that arose out of the investigation of Angel Mariscal and C.R.T.  The overwhelming majority of the sentences involved prison sentences of 12-36 months.  For each case with a sentence less than 12 months, there was one where the sentence exceeded 36 months.  The government is asking this Court to sentence Lavely to 21 months in prison. Twenty-one of the 34 listed cases (60%) involved a prison sentence of at least 21 months.

### 4. Recommendation

Accordingly, the government recommends that this Court sentence Anthony Lavely to 21 months in prison, with a recommendation that he be placed in either the Butner sex-offender treatment program or the Devens sex-offender management program, to be followed by three years of supervised release with special

conditions that require mental health and sex-offender specific treatment, including the use of polygraph testing as an adjunct to his therapeutic treatment, a fine of $5,000, and a special assessment of $100.

                        Respectfully submitted,

                        MICHAEL J. SULLIVAN
                        United States Attorney

                By:  /s/ Timothy Q. Feeley
                     TIMOTHY Q. FEELEY
                     Assistant U.S. Attorney
                     (627) 748-3172

November 1, 2005

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by electronic filing notice:

        Stephen R. Delinsky, Esq.
        Eckert Seamans Cherin & Mellott, LLC
        One International Place
        18th Floor
        Boston, MA 02110

This 1st day of November 2005.

                        /s/ Timothy Q. Feeley
                        TIMOTHY Q. FEELEY
                        ASSISTANT UNITED STATES ATTORNEY